### GILBRAITH et al. v. STEWART TRANSP. CO.

#### (Circuit Court of Appeals, Seventh Circuit.   October 7, 1902.)

#### No. 881.

1. SEAMEN—SERVICES FOR RELIEF OF STRANDED VESSEL—SPECIAL SALVAGE.
   Services rendered by the crew of a stranded steamer in throwing overboard the cargo of coal to save the vessel, which was not abandoned, were within the duties of their employment; and, although arduous, perilous, and meritorious, the crew cannot recover therefor on the theory that they constituted special salvage services.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

The Steamer, "C. F. Bielman" on a voyage from Buffalo to Milwaukee, carrying a cargo of three thousand tons of soft coal, struck and lodged September 17th, 1900, on Fisherman's Shoals, two and one-half miles from shore, and fifteen miles from Milwaukee, the nearest port.

The crew—sixteen in number—including appellants, were under articles as hired seamen, to make the round trip from Buffalo to Milwaukee, and return to some Lake Erie port, at the wage of twenty-five dollars per month and board.

The steamer struck at about 11:30 P. M. September 17th. Notice having been sent to the underwriters at Milwaukee, the crew, under the direction of the captain, about ten o'clock in the forenoon, September 18th, began to shovel the coal overboard. This however, was stopped at six o'clock in the evening of that day, when a schooner in tow of a tug, with forty longshoremen aboard, arrived to relieve the steamer of its cargo. About one o'clock on the morning of the 19th, the schooner having taken on board about one thousand tons of coal, of the steamer's cargo left for Milwaukee, and after·

eight o'clock of the same day, the crew and longshoremen continued to shovel coal from the steamer into the lake.

About twelve o'clock the longshoremen, in company with the captain, went ashore, the crew remaining on the steamer shoveling coal, until eight o'clock in the evening, when they were taken ashore by a United States Life Saving boat which had been lying off for that purpose.

On the 20th, the weather cleared. The crew returned to the steamer and continued to throw coal overboard until noon of the 23rd, when the steamer thus lightered, floated off, and was brought into the port of Milwaukee. There is no question, that during the period of the ship's peril, just described, the crew worked with unremitting industry, and that the relief of the vessel was due largely to the lightering thus accomplished. The claim urged below and here is, that they are special salvors. The District Court dismissed the libel, and from that order the appeal was taken.

Francis Bloodgood, for appellants.
Tallmadge Hamilton, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion of the court:

The crew of a vessel, under articles for wages, can become general salvors, only after the vessel has become a shipwreck, without hope of recovery, and the crew discharged from further service. This general doctrine is not disputed. But it is insisted that, under certain circumstances, the crew though under articles for wages may become special salvors. Such relation arises, it is said, when the service rendered is arduous, perilous and meritorious, and under circumstances extraordinary in character. The argument is based for authority chiefly upon a dictum of Justice Story, in Hobart v. Drogan, 10 Pet. 122, 9 L. Ed. 363.

None of the cases actually decided exemplify the application of any such rule. It is needless to restate their facts in detail. In none of them was there given to the claimants more than their transportation from the place of accident to their homes, and their sustenance, or such sums as would equal their sustenance, during that interval.

But even this, meagre as it appears, is said by counsel to be a species of special salvage, and to illustrate the principle, if not the measure, of compensation that ought to be applied to the case under consideration. The argument has not won our concurrence. We do not doubt, that under the law, preexisting the recent legislation of Congress, freight was regarded as the mother of wages, and upon the loss of freight, wages ceased. But though in that state of maritime law, transportation home, and sustenance during that interval, were not, in strict logic, the payment of wages, they need not, by that fact alone, be attributed to the enforcement of any doctrine recognizing special salvage. The feeling underlying these early decrees was the dictate of humanity that shrinks from leaving a shipwrecked sailor on a distant shore, and, in cases of such catastrophe, added to the obligation of the master to pay wages, the further obligation to bring his crew home. To reach such a result there existed no need to build up a doctrine of special salvage, or in other ways than the

one object to be attained, break into the settled law of ship and crew.

But though the argument be accepted, the element upon which it is based is wanting in the case under consideration. There was no abandonment of the steamer "Bielman." The seamen lost nothing by the loss of freight; for, under existing law, the running of their contract for wages continued. The service rendered, in lightering the vessel, was different, in degree only, from the usual service in boisterous weather. What appellants did, plainly was within their duty as seamen, and was therefore paid for by the wages stipulated in the articles of employment.

The decree of the District Court is affirmed.